IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 22-CR-00001 |
| Plaintiff, | ) | |
| | ) | **INFORMATION** |
| vs. | ) | |
| | ) | Count 1 |
| DOUG HARGRAVE, | ) | 18 U.S.C. §§ 1344, 1349 and 2: |
| | ) | Bank Fraud |
| Defendant. | ) | |

The United States Attorney charges:

<u>**COUNT 1**</u>
**BANK FRAUD**

**INTRODUCTION**

At all times relevant to this Information:

1. Go Cedar Rapids ("GoCR") was an organization working to enhance Cedar Rapids' economy by promoting the Cedar Rapids area as a desired destination for travel, tourism, and events.

2. Newbo Evolve was a three-day music and cultural event in August 2018 planned and executed by GoCR that featured concerts by Maroon 5 and Kelly Clarkson and other attractions.

3. Defendant DOUG HARGRAVE was initially the GoCR's Board Treasurer and later became Vice President of GoCR's Board. In the summer of 2018, defendant HARGRAVE became GoCR's full-time Finance Director. As Finance Director, defendant HARGRAVE was supervised by and reported to a co-

1

schemer who also was employed by GoCR ("the co-schemer"). Defendant HARGRAVE was responsible for, among other things, updating Newbo Evolve's budget.

4. The co-schemer's duties at GoCR included, among other things, planning and executing Newbo Evolve. The co-schemer reported to GoCR's Board of Directors ("the GoCR Board"). The co-schemer provided updates on Newbo Evolve at periodic GoCR Board Meetings and at GoCR Executive Committee Meetings. These updates included, among other things, periodic Newbo Evolve budget updates and ticket sales information.

## GO CEDAR RAPIDS'S INITIAL NEWBO EVOVLE LOAN

5. In December 2017, GoCR sought and obtained a $1,500,000 revolving line of credit ("the initial loan") from a bank in Cedar Rapids, Iowa ("the lending bank"). The proceeds from the initial loan were used to fund Newbo Evolve. When requesting the initial loan, GoCR told the lending bank, among other things, that GoCR estimated it would sell 11,000 tickets for the Kelly Clarkson concert; 11,000 tickets the Maroon 5 concert; and 4,000 three-day passes. The co-schemer signed on behalf of GoCR a promissory note for the initial loan. The terms of the initial loan required GoCR to provide financial information when requested by the lending bank. The co-schemer and defendant HARGRAVE typically responded or directed others to respond to the lending bank's requests for GoCR and Newbo Evolve financial and ticket sales information.

## NEWBO EVOLVE'S FINANCIAL DIFFICULTIES

6. On or about February 9, 2018, GoCR began selling Newbo Evolve tickets to the public through a ticket vendor. The co-schemer received regular ticket sales updates from the ticket vending company.

7. Sometime in the first half of June 2018, the co-schemer and defendant HARGRAVE informed GoCR's Board Chairman that Newbo Evolve's updated budget was projecting a loss of $1.1 million.

8. On or about June 15, 2018, GoCR's Board Chairman directed the co-schemer and defendant HARGRAVE to find ways to cut Newbo Evolve's budget to reduce the newly projected loss of approximately $1.1 million to a projected loss of $250,000.

9. On or about June 20, 2018, at a GoCR Board meeting, the co-schemer presented a Newbo Evolve budget to the Board projecting a loss of $644,846.34. The GoCR Board was informed that "just under 6,500 total tickets" had been sold, and that "[t]he budget is very tight" and that Newbo Evolve would be "short at the end but there is nothing left to cut." The June 20, 2018 Newbo Evolve budget projecting a $644,846.34 loss was not provided to the lending bank.

10. As the Newbo Evolve event dates approached, GoCR did not have enough money to, among other things, pay Kelly Clarkson and buy the alcohol that was to be sold at the concert venue. Without additional financing, Newbo Evolve would have to be cancelled. The co-schemer and defendant HARGRAVE sought

3

additional financing from several new potential lenders. These other potential lenders were unwilling to loan the money needed to prevent Newbo Evolve's cancellation. The co-schemer and defendant HARGRAVE ultimately sought additional financing from the lending bank.

## THE SCHEME TO DEFRAUD

11. Beginning on a date unknown to the United States Attorney and continuing until and including August 2018, in the Northern District of Iowa, the co-schemer and defendant DOUG HARGRAVE knowingly executed, and attempted to execute, a scheme to defraud the lending bank, a federally insured financial institution, and to obtain money and funds owned and under the control of the lending bank by means of false and fraudulent pretenses, representations and promises ("the scheme to defraud").

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

12. It was a part of the scheme to defraud that the co-schemer and defendant HARGRAVE would by deceit and dishonest means, defraud the lending bank by making misrepresentations about Newbo Evolve' actual ticket sales, projected revenue, projected expenses, and the true amount of loss the co-schemer and defendant HARGRAVE were projecting and expecting Newbo Evolve to generate. The co-schemer and defendant HARGRAVE would thereby fraudulently induce and intend to fraudulently induce the lending bank to loan GoCR additional money to be used to further finance Newbo Evolve.

4

13. On or about July 16, 2018, defendant DOUG HARGRAVE, at the co-schemer's direction, emailed a false and fraudulent Newbo Evolve 2018 Budget to the lending bank in support of GoCR's request for an increase in its loan from the lending bank. This Newbo Evolve 2018 Budget falsely and materially overstated Newbo Evolve's expected revenues, falsely and materially understated Newbo Evolve's expected expenses, and falsely and materially overstated Newbo Evolve's expected profit to be $65,653.66.

14. Specifically, the false and fraudulent July 16, 2018 budget emailed to the lending bank included the following false projected income items, projected expense, and projected profit:

- $475,000.00 in Sponsorship Income;
- $1,790,672.66 in Concert Sales Income;
- $475,000 in Production Expense; and
- $65,653.66 in Profit.

15. In truth and in fact, as the co-schemer and HARGRAVE then and there well knew (1) Newbo Evolve was not going to receive $475,000.00 in Sponsorship Income; (2) Newbo Evolve was not going to receive $1,790,672.66 in Concert Sales Income; (3) Newbo Evolve was going to spend more than $475,000 on Production Expense; and (4) Newbo Evolve was not going to make a profit of $65,653.66, and instead was going to lose at least $640,000 and likely much more

16. On or about July 16, 2018, in a meeting with representatives of the lending bank, the co-schemer falsely represented and caused to be represented to

the lending bank that 9,000 tickets had been sold for Maroon 5's performance and 6,000 tickets had been sold for Kelly Clarkson's performance. In fact, as of July 16, 2018, as the co-schemer knew, only approximately 5651 tickets had been sold for Maroon 5's performance and only approximately 2081 tickets had been sold for Kelly Clarkson's performance.

17. On or about July 18, 2018, at a GoCR Board meeting, the co-schemer falsely represented to the GoCR Board that "[i]n the last week and a half ticket sales have spiked," and that 9,000 tickets had been sold for Maroon 5's performance and 6,000 tickets had been sold for Kelly Clarkson's performance. In fact, in the period from July 1 through July 16, 2018, ticket sales had not "spiked," and the co-schemer's ticket sale claims were significantly overstated. The co-schemer and defendant HARGRAVE did not share with the GoCR Board the false and fraudulent Newbo Evolve 2018 Budget projecting a $65,653.66 profit that defendant HARGRAVE had provided to the bank two days earlier.

18. On or about July 19, 2018, the lending bank approved an increase in GoCR's initial loan from $1,500,000 to $1,750,000. The co-schemer signed a promissory note for a loan of $1,750,000 from the lending bank and thereafter GoCR received $250,000 in additional borrowed funds from the lending bank.

19. On or about July 31, 2018, the co-schemer and defendant HARGRAVE, sought another increase in the loan amount from the lending bank. In connection with and in support of this loan increase request, the co-schemer and defendant HARGRAVE falsely represented in a meeting with representatives of the lending

6

bank that the false and fraudulent Newbo Evolve July 16, 2018 budget projecting a $65,653.66 profit that was previously provided to the lending bank was still in effect with one change: the sponsorships revenue projection was $250,000 lower than the sponsorships projection originally included the budget previously provided to the lending bank.

20. In truth and in fact, as the co-schemer and HARGRAVE then and there well knew (1) Newbo Evolve was not going to receive $1,790,672.66 in Concert Sales Income as projected in the July 16, 2018 budget; (2) Newbo Evolve was going to spend more than $475,000 on Production Expense as projected in the July 16, 2018 budget and (3) Newbo Evolve was not going to lose only approximately $200,000, and instead was going to lose at least $640,000 and likely much more.

21. On or about August 1, 2018, the lending bank approved another increase in GoCR's loan from $1,750,000 to $2,200,000. The co-schemer signed a promissory note for a loan of $2,200,000 from the lending bank and thereafter GoCR received $450,000 in additional borrowed funds from the lending bank.

22. Ultimately, Newbo Evolve lost more than $2 million. As a result, GoCR was unable to repay much of its loan from the lending bank when the loan became due.

## THE EXECUTION OF THE SCHEME TO DEFRAUD

23. On or about the date set out below, the co-schemer and defendant HARGRAVE, in furtherance of the scheme to defraud and obtain money and funds

owned by and under the custody and control of the lending bank, knowingly executed and caused the execution of the scheme as follows:

| Count | Date | Act in Execution of the Scheme |
|---|---|---|
| One | July 19, 2018 | The co-schemer signed a promissory note for a loan of $1,750,000 from the lending bank and thereafter GoCR received $250,000 in additional borrowed funds from the lending bank. |

This was in violation of Title 18, United States Code, Sections 1344, 1349 & 2.

Respectfully submitted,

*/s/ Sean R. Berry*
SEAN R. BERRY
United States Attorney

*/s/ Kyndra Lundquist*
KYNDRA LUNDQUIST
Assistant United States Attorney